UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRANDON K. ROE, et al.,

              Plaintiffs,

v.

STATE OF WASHINGTON, et al.,

              Defendants.

CASE NO. C13-5927 BHS

ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO ACCEPT LATE FILING, DENYING COUNTY DEFENDANTS' MOTION TO STRIKE, GRANTING  IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND REMANDING STATE LAW CLAIMS

This matter comes before the Court on several motions from the parties (Dkts. 57, 85, 91, 94).  The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

## I. PROCEDURAL HISTORY

On July 12, 2013, Plaintiffs Brandon Roe ("Mr. Roe") and Teri Roe ("Mrs. Roe") (collectively "the Roes") filed a civil rights and personal injury suit against various

ORDER - 1

1  defendants in Thurston County Superior Court.  Dkt. 1 at 10.  On October 18, 2013, the

2  case was removed to this Court.  *Id.* at 1–2.

3      On June 26, 2014, the Roes filed an amended complaint.  Dkt. 46.  The Roes

4  named Cowlitz County, Cowlitz County Sheriff's Department ("Sheriff's Department"),

5  Marc Gilchrist ("Detective Gilchrist"), and Patricia Schallert ("Detective Schallert")

6  (collectively "County Defendants") as defendants.  *Id.*  The Roes also named the State of

7  Washington, the Department of Social and Health Services ("DSHS"), Stephanie Frost

8  ("Frost"), Anita Teeter, Debbie Marker, and Vicky Payton (collectively "State

9  Defendants") as defendants.  *Id.*

10      The Roes allege federal law claims against County and State Defendants under 42

11  U.S.C. §§ 1983 and 1985.  *Id.* ¶¶ 8–9, 12.  The Roes also allege the following state law

12  claims against County and State Defendants: (1) negligent investigation; (2) negligent

13  training and supervision; (3) outrage; (4) trespass; and (5) malicious prosecution.

14  *Id.* ¶¶ 4–7, 10–11, 13–15.

15      On October 30, 2014, County Defendants moved for summary judgment.  Dkt. 57.

16  On November 17, 2014, the Roes responded.  Dkt. 89.  On November 18, 2014, the Roes

17  moved for leave to accept the late filing of Gary Preble's ("Preble") declaration in

18  support of the Roes' response.[1]  Dkt. 91.  On November 21, 2014, County Defendants

19

20  _____

21      [1] County Defendants have not shown any prejudice resulting from the late filing of
    Preble's declaration.  The Court therefore grants the Roes' motion for leave to accept the late
22  filing (Dkt. 91).

ORDER - 2

1  replied and moved to strike various exhibits submitted with Preble's declaration.[2]  Dkt.

2  94.

3         On November 13, 2014, State Defendants moved for summary judgment.  Dkt. 85.

4  On December 1, 2014, the Roes responded.  Dkt. 98.  On December 5, 2014, State

5  Defendants replied.  Dkt. 102.

6                              **II. FACTUAL BACKGROUND**

7         On May 11, 2010, a family friend, Heather Bonnell ("Bonnell"), noticed that the

8  Roes' three-year-old daughter, NR, had bruising on her face.  Dkt. 58, Declaration of

9  Patricia Schallert ("Schallert Dec."), Ex. A at 1.  When Bonnell asked NR what

10 happened, NR said that "mommy did it."  Dkt. 87, Declaration of Stephanie Frost ("Frost

11 Dec."), Ex. 1 at 3.  NR later said that "the dog did it."  *Id.*

12        Bonnell brought NR to Child Protective Services ("CPS").  *Id.*  CPS social worker

13 Frost discovered more bruising on NR's lower back.  Frost Dec. ¶ 5.  Frost subsequently

14 notified local law enforcement about the alleged child abuse.  Frost Dec., Ex. 1 at 3.

15        The Sheriff's Department dispatched Deputy Stumph to investigate.  Schallert

16 Dec., Ex. A at 1.  After arriving at CPS, Deputy Stumph interviewed Bonnell and

17 observed NR's bruising.  *Id.*  Another CPS social worker informed Deputy Stumph that

18 the Roes had a combination of six previous CPS referrals, all of which were related to

19

20

_____

21      [2] The exhibits submitted with Preble's declaration have no bearing on the Roes' federal

22 law claims.  Accordingly, the Court denies as moot County Defendants' motion to strike (Dkt.
   94).

1  child abuse and neglect.  *Id.* at 2.  Based on the allegations and the severity of NR's

2  bruising, Deputy Stumph placed NR in protective custody.  *Id.*

3        Later that day, Deputy Stumph, Sergeant Cruser, and Frost went to the Roes'

4  house to discuss NR's bruising with the Roes.  *Id.*  The Roes exited their house to talk

5  with the officers and social worker.  *Id.*

6        The Roes denied causing NR's injuries.  *Id.*  According to the Roes, NR injured

7  her face by tripping over their new dog.  *Id.*  Although the Roes had given NR a bath the

8  day before, the Roes did not notice bruising on NR's lower back.  *Id.*  The Roes did not

9  know how NR obtained the bruising on her lower back.  *Id.*  The Roes also stated that NR

10 is accident prone and has a tendency to bruise easily.  *Id.*; Frost Dec. ¶ 9.

11       The Roes agreed to have their four other children inspected for bruising.  Dkt. 46

12 ¶ 3.2; Schallert Dec., Ex. A at 2; Frost Dec. ¶¶ 9–10.  Deputy Stumph, Sergeant Cruser,

13 and Frost then entered the Roes' house to conduct general welfare checks.  Schallert

14 Dec., Ex. A at 2.  The Roes' other children did not have any bruises.  *Id.*

15       On May 12, 2010, the Sheriff's Department assigned the case to Detectives

16 Schallert and Gilchrist for further investigation.  Schallert Dec. ¶ 3.  During their

17 investigation, the detectives observed a forensic interview of NR.  Schallert Dec., Ex. D.

18 The detectives then interviewed Mr. Roe, Mrs. Roe, and Bonnell.  Schallert Dec., Exs. D,

19 F; Dkt. 81, Declaration of Marc Gilchrist ("Gilchrist Dec."), Ex. B.  The detectives also

20 interviewed Mrs. Roe's eighteen-year-old daughter, as well as the daughter's current

21 boyfriend and former boyfriend.  Schallert Dec., Exs. E, F.

22

1        On May 20, 2010, the detectives went to the Roes' house to take photos of their

2   house and new dog.  Schallert Dec., Ex. F at 5.  The Roes allowed the detectives to come

3   inside the house.  *Id.* at 6.  After taking photos, the detectives spoke with Mr. Roe

4   outside.  *Id.*  Mr. Roe expressed concern that Bonnell might be responsible for NR's

5   bruising.  *Id.*  The detectives interviewed Bonnell again a week later.  Gilchrist Dec., Ex.

6   C.

7        On June 24, 2010, Frost sent the detectives a report prepared by child abuse

8   consultant, Dr. Deborah Hall ("Dr. Hall").[3]  Schallert Dec., Ex. F at 6–7.  Dr. Hall had

9   reviewed NR's medical records and photos before preparing the report.  *Id.* at 7.  In her

10  report, Dr. Hall noted that NR's test results for bleeding disorder and clumsiness were

11  normal.  *Id.*  Dr. Hall also noted that NR had bruising on her face, lower back, and right

12  ear.  *Id.*  Dr. Hall concluded that "[t]he findings on this case are all very concerning for

13  physical abuse."  *Id.*

14       On July 14, 2010, Detective Schallert arrested Mrs. Roe for assault of a child in

15  the third degree.  Schallert Dec., Ex. G.  On July 22, 2010, DSHS filed a dependency

16  action on behalf of NR.  Dkt. 82, Declaration of Guy Bogdanovich, Ex. C.

17       In September 2011, a jury acquitted Mrs. Roe of the assault charge.  Dkt. 92,

18  Declaration of Gary Preble, Ex. 7.  On May 16, 2012, the juvenile court dismissed the

19  dependency action.  Dkt. 86, Declaration of Victoria Payton, Ex. G.

20

21  ──────────────

22       [3] In a previous order, the Court dismissed the Roes' claims against Dr. Hall. Dkt. 93.

### III. DISCUSSION

1

2   The Roes allege federal and state law claims against County and State Defendants.

3   Dkt. 46.  In their respective motions for summary judgment, County and State

4   Defendants argue that all claims against them should be dismissed.  Dkts. 57, 85.

5   **A.     Summary Judgment Standard**

6   Summary judgment is proper only if the pleadings, the discovery and disclosure

7   materials on file, and any affidavits show that there is no genuine issue as to any material

8   fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

9   The moving party is entitled to judgment as a matter of law when the nonmoving party

10  fails to make a sufficient showing on an essential element of a claim in the case on which

11  the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

12  323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

13  could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

14  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

15  present specific, significant probative evidence, not simply "some metaphysical doubt").

16  *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

17  if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

18  jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

19  U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

20  626, 630 (9th Cir. 1987).

21  The determination of the existence of a material fact is often a close question. The

22  Court must consider the substantive evidentiary burden that the nonmoving party must

meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.    Defendants' Motions for Summary Judgment**

**1.    Federal Law Claims**

The Roes allege federal law claims against County and State Defendants under sections 1983 and 1985. Dkt. 46 ¶¶ 8–9, 12.

**a.    42 U.S.C. § 1983**

First, the Roes allege that law enforcement officers and social workers unlawfully entered their home in violation of the Fourth Amendment. *Id.* ¶¶ 8–9. In their respective motions, County and State Defendants argue that the Roes' section 1983 claims are barred by the statute of limitations. Dkt. 57 at 20; Dkt. 85 at 7. County and State Defendants also argue that the Roes consented to the entry of their home. Dkt. 57 at 21; Dkt. 85 at 10.

The Roes do not address the section 1983 arguments in their response to County Defendants' motion. *See* Dkt. 89. In their response to State Defendants' motion,

1   however, the Roes explicitly concede that the Court should grant summary judgment on

2   their section 1983 claim against State Defendants.  Dkt. 98 at 1 n.1.

3       The Roes have failed to identify any material question of fact in regards to their

4   section 1983 claims.  Indeed, the Roes implicitly and explicitly concede the dismissal of

5   their section 1983 claims against County and State Defendants.  *See* Dkt. 89; Dkt. 98.

6   The Court therefore grants summary judgment in favor of County and State Defendants

7   on the Roes' section 1983 claims.

8               **b.    42 U.S.C. § 1985**

9       The Roes also allege that County Defendants and DSHS employees conspired to

10  interfere with the Roes' civil rights in violation of section 1985.  Dkt. 46 ¶ 12.  In a

11  previous order, this Court denied the Roes leave to include this claim in their amended

12  complaint.  Dkt. 43 at 2.  Accordingly, the Court dismisses the Roes' section 1985 claim.

13          **2.    State Law Claims**

14      In addition to their federal law claims, the Roes allege state law claims for

15  negligent investigation, negligent training and supervision, outrage, trespass, and

16  malicious prosecution.  Dkt. 46.  County and State Defendants argue that these claims

17  should be dismissed on various grounds.  *See* Dkts. 57, 85.

18      A district court may decline to exercise supplemental jurisdiction over state law

19  claims when it "has dismissed all claims over which it has original jurisdiction."  28

20  U.S.C. § 1367(c)(3).  Because the Court grants summary judgment on the Roes' section

21  1983 and 1985 claims, the Roes no longer have any federal claim before this Court.

22  Additionally, the Roes' state law claims involve a novel issue of state law under

1   RCW 4.24.595.  For these reasons, the Court declines to exercise supplemental

2   jurisdiction over the Roes' state law claims and remands these claims to state court.  *See*

3   *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351–53 (1988).  The Court also denies as

4   moot County and State Defendants' motions in regards to the state law claims.

5                                                    **IV. ORDER**

6            Therefore, it is hereby **ORDERED** that the Roes' motion for leave to accept late

7   filing (Dkt. 91) is **GRANTED**.  County Defendants' motion to strike (Dkt. 94) is

8   **DENIED as moot**.  County and State Defendants' motions for summary judgment (Dkts.

9   57, 85) are **GRANTED in part** and **DENIED in part as moot**.  The Roes' section 1983

10  and 1985 claims are **DISMISSED with prejudice**.  The Roes' remaining state law

11  claims are **REMANDED** to Thurston County Superior Court.  The Clerk shall enter

12  judgment for County and State Defendants and close this case.

13          Dated this 7th day of January, 2015.

14

15  _____

16  BENJAMIN H. SETTLE
    United States District Judge

17

18

19

20

21

22

ORDER - 9